# United States Court of Appeals for the Federal Circuit

---

**INGURAN, LLC, DBA STGENETICS,**
*Plaintiff-Appellant*

**v.**

**ABS GLOBAL, INC., GENUS PLC,**
*Defendants-Appellees*

---

2022-1385

---

Appeal from the United States District Court for the Western District of Wisconsin in No. 3:20-cv-00085-wmc, Judge William M. Conley.

---

Decided: July 5, 2023

---

Z.W. JULIUS CHEN, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, argued for plaintiff-appellant. Also represented by KRISTEN LOVELAND, PRATIK A. SHAH; DANIEL LYNN MOFFETT, San Antonio, TX.

STEVEN J. HOROWITZ, Sidley Austin LLP, Chicago, IL, argued for defendants-appellees. Also represented by STEPHANIE P. KOH, THOMAS D. REIN.

---

Before LOURIE, BRYSON, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge.*

Appellant Inguran, LLC appeals the dismissal by the Western District of Wisconsin of the induced infringement suit it brought against Appellee ABS Global, Inc. The district court found that Inguran's claim was precluded by res judicata based on an earlier judgment the court entered against Appellee. On appeal, Inguran challenges the district court's res judicata finding and the court's interpretation of the scope of its earlier judgment. We reverse.

BACKGROUND

The patent at issue, U.S. Patent No. 8,206,987 (the "'987 patent"), titled "Photo-Damage Method for Sorting Particles," is directed to a method for sorting bull sperm cells according to a specific DNA characteristic in order to preselect the gender of a domestic animal's offspring. '987 patent, col. 19 ll. 40–44. Claim 1 of the '987 patent recites:

> 1. A method of sorting a mixture of stained sperm cells having either characteristic A or characteristic B into at least one population, the method comprising the steps of:
>
> > a. flowing a fluid stream containing stained sperm cells through a flow path at a fluid delivery rate;
> >
> > b. exciting fluorescence emissions from the stained sperm cells having characteristic A and the stained sperm cells having characteristic B flowing in the flow path;
> >
> > c. detecting the fluorescence emissions from the excited sperm cells;
> >
> > d. classifying the stained sperm cells as either having characteristic A or having characteristic B based upon the fluorescence emissions;

> e. selecting stained sperm cells in the flow path based on their classification; and
>
> f. photo-damaging the selected sperm cells to produce an enriched population of sperm with respect to either characteristic A or characteristic B.

*Id.* at col. 212 l. 57–col. 213 l. 8. Appellant Inguran, LLC is the patent holder of the '987 patent. Inguran, doing business as STGenetics ("ST"), provides bull semen-processing services, including to, at one time, Appellee ABS Global, Inc. and Appellee's parent company Genus PLC ("ABS"). J.A. 6776–78.

ABS is a "bull stud." A bull stud is a specialized business that sells semen drawn from its own bulls that is packaged in small tubes, or "straws," for use in artificial insemination. J.A. 6777; Appellee's Br. 4. Artificial insemination is needed by, for example, dairy farmers and beef producers to increase fertility rates of female calves, which is profitable for milk production. Appellee's Br. 4. "Conventional" bovine straws tend to produce an offspring of each sex approximately 50% of the time, since it has approximately 50% of each X-chromosome and Y-chromosome-bearing sperm cells. *Id.* ST provides bull studs like ABS with "sexed semen straws," which consist either of predominantly male or female sperm cells. J.A. 6777. This appeal focuses on "sexed semen straws."

## PROCEDURAL HISTORY

The parties have a lengthy litigation history that stems from a contractual relationship. J.A. 6777. In 2006, ABS and ST entered into a contract for sorting semen. *Id.* The parties entered into another related agreement in 2012. *Id.*

### *ABS I*

In 2014, ABS filed an antitrust lawsuit in the Western District of Wisconsin, *ABS Global Inc. v. Inguran, LLC*, No.

14-cv-503 (W.D. Wis. 2014) ("*ABS I*"), against ST alleging that ST was maintaining a monopoly power for sexed semen processing by its contractual terms and acquisition of patents on the technology. J.A. 6777. ST brought counterclaims and third-party claims for trade secret misappropriation, breach of contract, and, relevant here, patent infringement. J.A. 6778. ST alleged, in a counterclaim, that ABS's competing GSS System or technology directly infringed at least one claim of the '987 patent. J.A. 6798. ABS stipulated to direct infringement of claims 1, 2, and 7 of the '987 patent. *See* J.A. 3, 271, 3439, 6798; Appellant's Br. 3.

The parties presented to a jury expert testimony as to damages. ST's damages expert based his proposed royalty rate by considering many factors, including by conducting a hypothetical negotiation based on the framework in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ("Georgia-Pacific factors").[1] J.A. 7227–28. ST's expert highlighted agreements between ABS and prospective licensees to show what royalty rates ST would expect to receive in exchange for giving another company the right to use its technology to process and sell sexed straws. Appellant's Br. 32; Appellee's Br. 11; J.A. 7300. ST's expert calculated that ABS would charge a

---

[1] The fifteen Georgia-Pacific factors set out an analytical framework for assessing a reasonable royalty and for determining the value of the patented technology to parties in the marketplace. *Georgia-Pacific Corp.*, 318 F. Supp. at 1120; *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 60, 60 n.2, 76 (Fed. Cir. 2012). Relevant here is factor 6: "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." *Georgia-Pacific*, 318 F. Supp. at 1120.

royalty rate of $2.05 per straw. Appellant's Br. 9–10; Appellee's Br. 11. ST's expert testified that ABS's licensing plan would open additional lines of revenue for ABS. Appellee's Br. 10. ST's expert further opined that the parties would have agreed in a hypothetical negotiation to a per-straw royalty rate of $1.50. Appellant's Br. 10.

The jury found that claim 2 of the '987 patent was invalid and that the remaining claims were infringed. J.A. 3, 6798. The jury awarded ST a "lump sum for ABS's past infringement in the amount of $750,000, and a per straw royalty on future sales of sexed semen straws sold by ABS of $1.25." J.A. 3802.

The district court provided that:

> Judgment is entered for ABS or Genus's future infringement of the '987 patent, granting ST an ongoing royalty of One Dollar and Twenty-Five Cents ($1.25) per straw of sexed semen sold by ABS that was processed with the infringing GSS technology, or any technology not more than colorably different, where such sale or processing took place in the United States through the remaining life of the '987 patent.

J.A. 7503. Both parties disputed the scope of the ongoing royalty, and the district court issued an order attempting to resolve the dispute, stating: "th[e] ongoing royalty covers straws sold by ABS that were processed with GSS technology and imported into the United States for sale." J.A. 5.

The judgment was appealed to the Seventh Circuit. *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054 (7th Cir. 2019). The Seventh Circuit affirmed the district court's validity findings for the claims and issued a remand order that did not concern judgment of the ongoing royalty of *ABS I*. Appellant's Br. 12–13.

*ABS II*

On June 7, 2017, ST filed another patent infringement suit against ABS in the Western District of Wisconsin, *Inguran, LLC v. ABS Global, Inc.*, No. 17-cv-446 (W.D. Wis.) ("*ABS II*").

*ABS II* was consolidated with the remand proceedings in *ABS I* for trial. Appellee's Br. 14. During trial, ST learned that, in addition to using the GSS System to sort semen and produce straws for both itself and others, ABS had begun selling and licensing the GSS System to third parties and teaching them how to use the technology so that those parties could process and produce their own sexed straws. Appellant's Br. 13; J.A. 273–74.

Addressing remaining issues after trial and the remand order from the Seventh Circuit in *ABS I*, the district court entered judgment that included an ongoing royalty "subject of course to a renewed finding of the ['987] patent's validity," J.A. 7552, along with supplemental damages for sexed semen straws processed by foreign ABS licensees and imported for sale in the United States, J.A. 7551–67; Appellee's Br. 14–15.

*ABS III*

On January 29, 2020, ST filed a third suit against ABS before the Western District of Wisconsin, *Inguran LLC v. ABS Global, Inc.*, No. 20-cv-85 ("*ABS III*"). J.A. 266–83. ST asserted additional patent infringement claims on the same '987 patent and filed two motions to supplement its complaint to assert two recently issued patents, U.S. Patent Nos. 10,583,439 (the "'439 patent) and 10,689,210 (the "'210 patent"). J.A. 2–3. ST asserted, among other claims, induced infringement under 35 U.S.C. § 271(b) based on ABS's selling or licensing GSS machines to third parties. J.A. 3.

ABS filed a motion to dismiss the induced infringement claims of the '987 patent on the grounds that the claims

were precluded by the judgment in *ABS I*. J.A. 4. The district court agreed with ABS, finding that *ABS I* "resolve[d] the claims asserted in the original complaint in the '085 [*ABS III*] case," and dismissed the action. J.A. 2–3. The district court also ruled to stay the pending case regarding the '439 patent pending conclusion of the Patent Trial and Appeal Board's *inter partes review* of that patent. J.A. 3. The district court denied ST's motions to supplement as moot and noted that, if ST wanted to add additional infringement claims concerning the '210 patent, they must seek leave to amend in its patent infringement claims and explain "why those claims should proceed at this time in light of the stay of the infringement claims under the '439 patent." *Id.*

In June 2020, the district court clarified the scope of its previous order in a second amended judgment. J.A. 7564–67; Reply Br. 9–11; J.A. 7572–78. In December 2021, the district court did so again. J.A. 2–10. To that effect, the district court stated that "the judgment is reasonably interpreted to cover straws produced by third parties using GSS technology as licensed by ABS" and that "the court agrees that Count I of [*ABS III*] is precluded by the judgment in *ABS I*." J.A. 7. ST appeals both the district court's interpretation of the scope of the ongoing royalty and the finding of claim preclusion. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

STANDARD OF REVIEW

Whether a claim is barred by claim preclusion is a question of law that we review de novo. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). When assessing the general principles of claim preclusion, this court applies the law of the regional circuit in which the district court sits, here, the Seventh Circuit. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018). Under Seventh Circuit law, there are three elements to claim preclusion: "(1) an identity of the parties or their

privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). We apply our own authority and precedent when addressing questions of U.S. patentability. *Superior Indus., LLC v. Thor Glob. Enters. Ltd.*, 700 F.3d 1287, 1291 (Fed. Cir. 2012). For example, in the context of claim preclusion in a patent case, this court looks to its own precedent to resolve "the operative facts involved in a claim for patent infringement." *Id.* Here, we have interpreted "same cause of action" to mean "the second claim is based on the same set of transactional facts as the first." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000).

We review a district court's interpretation of the scope of equitable authority and its orders for abuse of discretion. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358–60 (Fed. Cir. 2008). The Seventh Circuit has cautioned against giving "[t]oo much deference" to a court's later interpretation where doing so would "create[] the risk that interpretation of an order becomes a means to rewrite it." *Grede v. FCStone, LLC*, 746 F.3d 244, 257 (7th Cir. 2014).

## Discussion

On appeal, ST challenges both the district court's finding that the *ABS I* judgment precluded ST's induced infringement claims in *ABS III*, and the district court's interpretation of the scope of its order regarding the ongoing royalty. We first address the issue of res judicata or claim preclusion.

## I

As noted above, under Seventh Circuit law, there are three elements to claim preclusion: "(1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams*, 742 F.3d at 736.

The parties only dispute one element of the test, element two: the "same cause of action." Appellant's Br. 19; Appellee's Br. 20. There is no dispute that the parties and the asserted '987 patent are the same between *ABS I* and *ABS III*, or that there was a final judgment on the merits. Appellee's Br. 15; Appellant's Br. 19–20.

Under claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Acumed*, 525 F.3d at 1323. Thus, whether the induced patent infringement claim asserted in *ABS III* is precluded by the *ABS I* judgment hinges on whether the same "cause of action" or set of "transactional facts" are at issue. We have held that "a cause of action" is based on the transactional facts from which it arises. *SimpleAir,* 884 F.3d at 1165 ("In a patent suit, essential transactional facts include both the asserted patents and the accused activity.") (cleaned up).

ST asserts that the patent infringement claims raised in *ABS I* and *III* are separate and distinct causes of action involving different infringing acts. Appellant's Br. 19–20. According to ST, *ABS I* focuses on direct infringement while *ABS III* focuses on induced infringement. *Id.* ST argues that an action involving direct infringement cannot preclude a subsequent action based on induced infringement. *Id.* at 21–24. As support, ST highlights the different elements needed to prove direct infringement under 35 U.S.C. § 271(a) from those needed to prove induced infringement under § 271(b). *Id.* at 20–21; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). ST argues that it would have been premature to bring an induced infringement action against ABS during *ABS I* because, at that time, ABS had not yet begun selling or licensing its GSS technology to third parties. Appellant's Br. 23. ST argues that, even if it was "on notice" that ABS planned to license its GSS System during *ABS I*, notice of a potentially infringing activity cannot form the basis of a justiciable claim. *Id.* at 24–25.

ABS contends that ST accused the same conduct—its licensing program—in both *ABS I* and *ABS III* and that the transactional facts "are all but identical." Appellee's Br. 17, 21–22. ABS disagrees with ST's argument that it was premature to raise an induced infringement claim in *ABS I* because the entire accused activity in *ABS I* had not yet occurred; ABS had "neither sold a single sexed semen straw nor entered into a single fee-for-service contract" by the time of trial in *ABS I* such that the relief sought was already prospective in nature. *Id.* at 22. ABS cites the testimony from *ABS I* of its business development director who explained the company's three "business models" for selling the GSS technology such that ST and the jury knew and understood the "anticipated commercial uses" at that time.[2] *Id.* at 22–23.

In patent cases, this court applies the general rule that res judicata does not bar the assertion of "new rights acquired during the action which might have been, but which were not, litigated." *Gillig v. Nike, Inc.,* 602 F.3d 1354, 1363 (Fed. Cir. 2010) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997)); *see also Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir. 1992) ("[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action."). Indeed, claim preclusion requires that the claim

---

[2] At oral argument, ABS described two main business models: "fee-for-service" and "licensee." Oral Arg. at 20:57–22:34. In both models, ABS makes the GSS machine and delivers it to the customers configured to the "nature of the animal genetics at play." *Id.* at 21:43–21:46. ABS employees operate the machine in the first model while, in the second model, the machine is operated by the customer's employees according to ABS's operations. *Id.* at 32:43–33:39.

either was asserted, or could have been asserted, in the prior action. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012). If, for example, the claim did not exist at the time of the earlier action, it could not have been asserted in that action and is not barred by res judicata. *Id.*

In view of the foregoing, we first address whether ST asserted an induced infringement claim against ABS in *ABS I*. It did not. ST's reference to § 271(b) in its answer was its induced infringement claim against the parent company Genus for the actions taken by ABS. We find no support in the record that ST asserted or cited induced infringement against ABS for actions taken by third parties as a result of ABS's activities. J.A. 3270–71; *contra* Appellee's Br. 9–10.

Next, we address whether ST could have brought an induced infringement claim against ABS at the time the complaint was filed before the district court. Here, we look to whether an induced infringement claim could have been raised out of the transactional facts in *ABS I*. *Superior Indus.,* 700 F.3d at 1291; *see also Acumed*, 525 F.3d at 1323–24 ("Under the Restatement approach to claim preclusion, a claim is defined by the transactional facts from which it arises."). To be sure, courts have wrestled with how to assess the portion of the test stating that any claims that "could have been raised in a prior action." *See, e.g.*, *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 n.2 (9th Cir. 2005). For example, some courts will find that a claim is precluded by a prior action if it involves the same legal theory or cause of action. *Id.* Here, we resolve whether a claim "could have been raised" on the basis of the same transactional facts. We hold that the induced infringement claim brought in *ABS III* is not precluded by the direct infringement claim brought in *ABS I* because the claims are not based on the same transactional facts.

The accused activity and the transactional facts differ between the direct infringement claims asserted in *ABS I* and the induced infringement claims raised in *ABS III*. *ABS I* centered around ABS's activity for direct infringement, while the induced infringement claim of *ABS III* centers around third parties whose direct infringement activities are induced by ABS. Appellant's Br. 21–22. Framed differently, the evidence that ST needs to support a claim for direct infringement by ABS is different from the evidence required to sustain a claim of induced infringement by third parties. ST would need *additional* facts to plausibly allege an induced infringement claim—facts that largely came to light during discovery in *ABS II*.

We agree with ST that an induced infringement claim rests on evidence and elements beyond those required by direct infringement. *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022) ("For induced infringement under 35 U.S.C. § 271(b), the two steps become three. In addition to showing direct infringement . . . , the patentee must also show that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" (quoting *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 407 (Fed. Cir. 2018)).; *see also Gammino v. Am. Tel. & Tel. Co.*, No. 12-666, 2013 WL 6154569, at *2 (D. Del. Nov. 22, 2013) (finding that res judicata did not bar a direct infringement claim because induced and indirect infringement claims arise under different statutes and comprise different causes of action).

We recognize that minimal evidence exists in the *ABS I* record that arguably supports an allegation that ABS induced third parties to infringe ST's patent. At the time of the *ABS I* trial, ABS had not yet commercially launched its GSS System. Appellee's Br. 7, 9–10; Appellant's Br. 4–5. The evidence established that ABS directly infringed ST's '987 patent by the sale of sexed straws sold by ABS. Appellant's Br. 5, 31. The only evidence that ABS's proposed

business model involved third parties, which is what ST refers to as "sublicensing," was a single "brainstorming" internal-facing document. Oral Arg. at 2:32–3:30; Conf. J.A. 3347; J.A. 4250–51.[3] Even so, we have held that a suit may not be barred by claim preclusion, even where the same transactional facts are present in both suits, if infringement allegations are "temporally limited to acts occurring after final judgment was entered in the first suit." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014).

An induced patent infringement claim brought at the time of trial in *ABS I* would have been based on speculation, in part because the parties stipulated to direct infringement and the question of inducement was not before the jury. Oral Arg. at 25:12–26:48. We agree with ST that it could not have asserted an inducement claim during *ABS I*. Accordingly, the district court erred in applying res judicata or claim preclusion to ST's induced infringement claim. With that context in mind, we turn to whether the district court, in its later interpretation of its *ABS I* order, improperly expanded the scope of the order.

## II

Subsequent to entering judgment in *ABS I*, the district court clarified that the language in its order covered straws sold by ABS that were processed with the GSS technology and imported into the United States for sale. J.A. 5. Years later, the district court again "conclude[d]" that the judgment of *ABS I* "reasonably . . . cover[ed] straws produced by third parties using GSS technology as licensed by ABS."

---

[3] ST stated at oral argument that it believes ABS began sublicensing its GSS technology to third parties at some point after the judgment in *ABS I* was entered. Oral Arg. at 11:53–12:17. ABS clarified that the record contains evidence of foreign licensing with payments made but no known domestic licensing. *Id.* at 13:09–14:11.

J.A. 7. Thus, the district court found that the ongoing royalty rate of *ABS I* reached induced infringement by ABS. *See* Appellant's Br. 26. The district court's finding relied on its interpretation of its order as well as the testimony of ST's damages expert. J.A. 4–7. On appeal, ST challenges the district court's interpretation and its order in *ABS I*.

ST asserts that its expert's testimony confirms that the ongoing royalty in *ABS I* is limited to ABS's direct infringement of the '987 patent. Appellant's Br. 31–33; Oral Arg. at 9:37–58, 29:29–31:56. ST argues that the district court's interpretation of its order was given five years after the order was issued and is "plainly" broader in scope and "inconsistent with the language of the order." Reply Br. 28 (citing *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011) and *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1315 (Fed. Cir. 2004)). On the other hand, ABS cites various portions of ST's damages expert testimony that ABS claims reflect the understanding that ABS intended to license the GSS technology, which ABS argues was factored into the proposed reasonable royalty rate and award in *ABS I*. Appellee's Br. 23–24.

We have admonished district courts for issuing sweeping injunctions that cover potential infringing activities. *Aspex*, 672 F.3d at 1344 (citing *Forest Lab'ys., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1272 (Fed. Cir. 2007)). The Seventh Circuit has also cautioned that too much deference to an issuing court's much-later interpretation of an order "would undermine the ability of parties and non-parties to rely on a court order" and "creates the risk" where interpretation can become a means to "rewrite it after unintended consequences have given rise to regrets." *Grede*, 746 F.3d at 257. We conclude that the district court's subsequent interpretation or clarification of its initial order essentially rewrites that order.

Here, the plain language of the royalty is limited to straws. Oral Arg. at 1:02–37. The plain language of the

clarifying order first issued by the court is also limited to straws. J.A. 5. While "GSS technology" is mentioned throughout *ABS I*, *see, e.g.*, Conf. J.A. 5785; Conf. J.A. 7673, the scope of ABS's direct infringement allegations cannot reasonably be expanded to cover actions of third-party licensees using GSS technology to make their own straws.

In light of the reasons we state above that claim preclusion does not apply in this case, we hold that the district court improperly broadened the scope of the *ABS I* judgment to address induced infringement activity. *See Amado*, 517 F.3d at 1359; *see also Grede*, 746 F.3d at 257. We therefore reverse the district court's interpretation of its prior order.

## CONCLUSION

We hold that ST was not precluded from bringing an induced patent infringement claim in *ABS III* based on the judgment in *ABS I*. We also hold that the district court abused its discretion by interpreting its initial order in *ABS I* in a way that expanded that scope of the order. Thus, we reverse the district court's dismissal order with respect to claim preclusion.

## REVERSED

## COSTS

No costs.